IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRANDON D. COX, | ) | |
| AIS# 308472, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:23-cv-226-RAH-JTA |
| | ) | |
| PATRICE RICHIE JONES, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Petitioner Brandon D. Cox, an Alabama inmate proceeding pro se, seeks habeas corpus relief under 28 U.S.C. § 2254. The operative pleading before the court is Cox's Amended Petition, in which he contends that the state trial court "erred when it denied [P]etitioner's repeated requests for expert funds in violation of the Fourteenth Amendment and the Sixth Amendment." (Doc. 10 at 7.) Respondents (collectively, "the State") filed an Answer and Supplemental Answer. (Docs. 6 and 11.) After full consideration of the parties' briefs, the issue is ripe and ready for adjudication.

The court concludes that each of Cox's claims is either abandoned, waived, or otherwise fails on the merits. Because the court is able to resolve the petition on the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## II. BACKGROUND

### A. The Offense

Brandon D. Cox was convicted in the Circuit Court of Elmore County, Alabama, of seven counts of possession of obscene matter containing a visual depiction of persons under the age of seventeen, a violation of Alabama Code § 13A-12-192(b). *Cox v. State*, No. CR-16-0734, slip op. at 1 (Ala. Crim. App. Apr. 20, 2018).[1] The charges arose from an investigation conducted by the Alabama Law Enforcement Agency ("ALEA") into the online distribution of child pornography through peer-to-peer file-sharing programs. (Doc. 7-9 at 2.) As part of that investigation, ALEA Special Agent Kathy Stewart identified a computer using the FrostWire file-sharing program that was sharing files with names suggestive of child pornography. (*Id.*) After downloading several files and determining that they appeared to depict minors engaged in sexual activity, Agent Stewart subpoenaed the Internet Protocol address of the computer, which was registered to the residence of Cox's mother. (*Id.*)

Law enforcement officers executed a search warrant at that residence on September 22, 2011, and recovered a laptop computer on a sofa in Cox's bedroom and a thumb drive underneath a cushion on that same sofa. (*Id.* at 3.) A preliminary forensic review indicated that both devices contained images and videos depicting child pornography. (*Id.*) Cox spoke with law enforcement and acknowledged that he lived at the address and was the sole user of the laptop. He also admitted using FrostWire to download music and adult pornography but denied intentionally downloading or viewing child pornography. (*Id.*) While Cox stated he did not know child pornography was on the thumb drive, he told investigators that if they were showing him the names of such files, he did "not doubt that they are there." (*Id.*)

---

[1] The Alabama Court of Criminal Appeals' memorandum opinion is included in the federal habeas record as Exhibit 5 to Respondents' Notice of Submission of Exhibits, filed as Document 7-9.

A forensic examination of the laptop and thumb drive was conducted by ALEA Agent Laurie Evans, who testified as an expert in forensic technology at Cox's trial. (*Id*. at 4.) Agent Evans recovered numerous images and videos depicting child pornography from the devices and testified that, in her professional opinion, the files were not the result of accidental downloads or computer viruses. (*Id*.) Her conclusions were based on, among other things, the presence of search terms commonly associated with child pornography and the manner in which files were transferred between devices. (*Id*.)

At trial, Cox did not contest the illicit nature of the media but instead centered his defense on the lack of intent. (*Id*.) Cox testified that he used FrostWire primarily to obtain music for talent competitions, that the program was already installed on his computer when he purchased it, and that malware or inadvertent bulk downloads explained the presence of illicit material. (*Id*. at 4–5.) During cross-examination, Agent Evans conceded that it is possible to mass download and transfer digital media without having ever viewed the content of each file. (*Id*. at 4; *see also id*. at 7–9.)

The jury ultimately convicted Cox of seven counts of violating Alabama Code § 13A-12-192(b), which requires the State to prove that a defendant "knowingly possesses any obscene matter" depicting minors. (*Id*. at 1; *see also id*. at 16, 19.) For these offenses, the trial court sentenced Cox to consecutive terms of ten years' imprisonment for each count, resulting in a total sentence of seventy years. (*Id*. at 1.)

## B. Direct Appeal

Prior to trial, Cox filed three motions requesting funds to retain an independent computer forensic expert to examine the laptop and thumb drive recovered from his residence. (Doc. 10 at 14.) Cox asserted that an independent expert was necessary to "explain how downloaded files can be corrupted with viruses, unknown programs, or other data" to support his theory that the child

pornography was downloaded without his knowledge. (*Id.*; Doc. 7-9 at 5.) The trial court denied the motions. (Doc. 7-9 at 6.)

On direct appeal, Cox contended that the trial court's refusal to authorize funds for an independent expert rendered his trial fundamentally unfair. (Doc. 7-9 at 6.) The Alabama Court of Criminal Appeals ("ACCA") reviewed this claim under the framework of *Ake v. Oklahoma*, 470 U.S. 68 (1985) ("Ake"), as set out by the Alabama Supreme Court in *Ex parte Moody*, 684 So. 2d 114, 118–19 (Ala. 1996). (Doc. 7-9 at 10–11.) The ACCA explained that while *Ake* ensures an indigent defendant has access to a "competent" expert to assist in the "evaluation, preparation, and presentation of the defense," it does not confer a "constitutional right to choose a [specific expert] of his personal liking or to receive funds to hire his own." (*Id.* at 10–11) (quoting *Ake*, 470 U.S. at 83). Relying on state precedent that adopted federal standards, the ACCA noted that a defendant must show "a reasonable probability that an expert would aid in his defense and [that] a denial of an expert . . . would result in a fundamentally unfair trial." (*Id.*) (quoting *Dubose v. State*, 662 So. 2d 1189, 1192 (Ala. 1995); *see also Moore v. Kemp*, 809 F.2d 702 (11th Cir. 1987) (en banc)).

Applying this framework, the ACCA reasoned that Cox's trial was not rendered fundamentally unfair by the denial of funds for an independent expert because defense counsel was able to consult with the State's forensic expert prior to trial and, through cross-examination of Agent Evans, present Cox's theory that the child-pornography files could have been downloaded without his knowledge. (Doc. 7-9 at 11.) The ACCA further noted that Cox had not shown that an independent expert would have provided materially different information to the jury, nor had he asserted that the State's expert was uncooperative. Accordingly, the ACCA concluded that the trial court's refusal to authorize funds for an independent expert did not violate the principles set forth in *Ake*. (*Id.*)

4

**C. Procedural History**

Following the ACCA's affirmance of his conviction, Cox filed an application for rehearing, which was overruled. (Docs. 7-10 and 7-11.) He then petitioned the Alabama Supreme Court for a writ of certiorari asserting that the ACCA erred by holding that the denial of expert funds did not violate his constitutional right to a fair trial under *Ake*. (Doc. 7-12.) The request for a writ was denied and a certificate of judgment was issued on July 13, 2018, concluding Cox's direct appeal proceedings. (Docs. 7-13 and 7-14.)

On or about May 28, 2019, Cox filed a petition for postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. (Doc. 7-18.) Following a denial by the Circuit Court of Elmore County and an affirmance by the ACCA, a certificate of judgment was issued on December 3, 2021. (Doc. 7-25.) Cox initiated a second Rule 32 proceeding on December 23, 2021. (Docs. 7-26 and 7-27.) The state courts denied relief, and a certificate of judgment was issued on April 5, 2023. (Doc. 7-31.) Neither of Cox's Rule 32 petitions reasserted the *Ake* claim. (Doc. 1 at 3–4.)

On April 17, 2023, Cox initiated the present action by filing a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (*Id.*) Thereafter, the State replied, and Cox moved to amend his petition. (Docs. 6, 7, and 8.) The Magistrate Judge granted Cox's motion to amend, and Cox filed his Amended Petition on February 15, 2024. (Docs. 9 and 10.) On April 5, 2024, the Magistrate Judge issued an order setting a deadline of April 26, 2024, for Cox to file a Reply and instructed that any documents or evidence filed after this date would not be considered except upon a showing of exceptional circumstances. (Doc. 12.) On April 30, 2024, Cox filed a Response. (Doc. 13.) The Amended Petition is the operative pleading before the court.

### III.   DISCUSSION

Pursuant to 28 U.S.C. § 2254(a), this court is authorized to entertain a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This review is limited strictly to federal constitutional questions; claims pertaining to a "state's interpretation of its own laws or rules" provide no basis for federal habeas relief. *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (quoting *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992)).

The burden of proof is on the habeas petitioner "to establish his right to habeas relief[,] and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) (citation omitted). To satisfy this burden, a petition must meet the "heightened pleading requirements" of Rule 2(c) of the Rules Governing Section 2254 Cases. *McFarland v. Scott*, 512 U.S. 849, 856 (1994). Specifically, the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 645 (2005) (quoting Rule 2(c) of the Rules Governing Section 2254 Cases). Conclusory allegations not supported by a statement of specific facts do not warrant habeas relief. *See Grant v. Georgia*, 358 F.2d 742 (5th Cir. 1966).[2]

Upon a liberal construction of the *pro se* Amended Petition (doc. 10), the court identifies a single substantive claim for relief—the denial of expert funds under *Ake*—supported by four distinct arguments.[3] *See, e.g., Tannebaum v. United States*,

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

[3] The state expressly concedes that the "[A]mended Petition has sufficiently pleaded a claim that [Petitioner] was unconstitutionally denied expert witness funds in violation of Ake." (Doc. 11 at 3.)

148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." (citation omitted)). Before reaching the merits of this claim, the court must first address the preliminary procedural requirements of timeliness and exhaustion, as well as several secondary contentions that are not properly before the court.

## A. Procedural Requirements

### 1. Timeliness

In this case, the State does not contest the timeliness of the petition. (Doc. 6 at 12.) Following the conclusion of his direct appeal and two subsequent Rule 32 proceedings—which provided statutory tolling under § 2244(d)(2)—the State calculates that 293 days of the one-year limitation period ran before Cox initiated this action. (*Id.*) A district court is not required to "double-check the State's math." *Day v. McDonough*, 547 U.S. 198, 209 (2006). Finding no clear error, the court concludes the Amended Petition is timely.

### 2. Exhaustion

The State concedes that Cox exhausted the *Ake* claim in state court "through one complete round of state court appellate proceedings by its presentation on direct appeal to the Court of Criminal Appeals and on certiorari review in the Alabama Supreme Court." (Doc. 11 at 3) (citing Doc. 6 at 15–16.) Accordingly, the court concludes that the *Ake* ground is exhausted and properly before this court.

## B. Abandoned and Waived Contentions

Before reaching the merits of the *Ake* ground, the court must address several contentions that are not properly before the court.

### 1. Abandonment of Sixth Amendment Claim

In his Amended Petition, Cox makes a passing reference to the "Sixth Amendment." (Doc. 10 at 7, 8.) However, Cox fails to provide any specific factual

allegations or legal arguments to support a Sixth Amendment claim. Under Eleventh Circuit precedent, "simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue." *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (holding that an appellant abandons a claim by making only "passing references to it or raises it in a perfunctory manner."). Accordingly, the court deems any purported Sixth Amendment claim abandoned.

### 2. Waiver of Supplemental Argument

In his Reply to the Supplemental Answer of Respondents (doc. 13), Cox raises several new arguments; viz., an allegation that the State's expert, Agent Evans, "deceptively" entered an amended forensic report (Exhibit 13)[4] into evidence and a legal argument regarding "dominion and control" over cache files under *United States v. Kuchinski*, 469 F.3d 853 (9th Cir. 2006). (Doc. 13 at 3–5.) These arguments are not properly before the court for at least two independent reasons.

First, these arguments were filed on April 30, 2024, four days after the court-ordered deadline. Cox has failed to show "exceptional circumstances" to justify the late filing as required by the Magistrate Judge's April 5, 2024, Order. (Doc. 12 at 1.)

Second, even if the arguments were timely, Cox raised these theories for the first time in a reply brief. As the Eleventh Circuit has repeatedly admonished, "[a]rguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994)). Because these factual and legal theories were absent from the operative Amended Petition, they are waived.

---

[4] Cox's "Exhibit 13" refers to pages 200 through 206 of the state court trial record. (*See* Doc. 13 at 4.) It is distinct from the state's "Exhibit 13" filed at Doc. 7-18.

Consequently, the court will not consider these supplemental arguments and limits its review to the four specific arguments supporting the *Ake* ground raised in the Amended Petition.

## C. Merits: The Cognizability of the *Ake* Claim

Under AEDPA, when a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

This standard is "difficult to meet" and clearly a "high bar" by design. *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (citation omitted). To prevail, a petitioner must first identify a clearly established legal principle originating from an actual Supreme Court holding, not from dicta. *See White v. Woodall*, 572 U.S. 415, 419 (2014). This holding must be described with specificity; a petitioner cannot rely on a holding at a "high level of generality" to expand the reach of a narrow ruling. *Brown v. Davenport*, 596 U.S. 118, 136 (2022); *see also Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per curiam).

The clearly established law regarding state-funded experts begins and ends with *Ake*. In *Ake*, the Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." 470 U.S. at 74.

While *Ake* utilized the due-process "balancing" test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to reach its result, since that time, the Supreme Court has "jettisoned this balancing test in [the] criminal context." *Bergman v. Howard*, 54 F.4th 950, 958 (6th Cir. 2022). In *Medina v. California*, 505 U.S. 437 (1992), the

9

Court opted for a narrower, historically rooted inquiry, noting that it was "not at all clear that *Mathews* was essential to the result[]" reached in *Ake*. *Id.* at 444.

Crucially, the Supreme Court has explicitly left open the question of whether *Ake* extends to experts other than psychiatrists. *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985). Because the Supreme Court has provided no specific guidance on non-psychiatric experts, state courts retain "broad discretion" to determine when such experts are required. *See Woodall*, 572 U.S. at 424 (citation omitted).

The Eleventh Circuit has consistently held that *Ake* does not constitute clearly established federal law regarding non-psychiatric experts. In *Conklin v. Schofield*, 366 F.3d 1191 (11th Cir. 2004), the Eleventh Circuit addressed a petitioner's claim that he was unconstitutionally denied funds for an independent pathologist to rebut the state's expert regarding intent. The Eleventh Circuit noted that "the Supreme Court has not yet extended *Ake* to non-psychiatric experts." *Id.* at 1206. This principle was reaffirmed in *Gary v. Hall*, 558 F.3d 1229 (11th Cir. 2009), where the Eleventh Circuit held that because the Supreme Court has not extended *Ake* beyond psychiatric assistance, a "denial-of-funds claim [does] not present a federal constitutional question, and the district court should not have entertained it." *Id.* at 1254; *see also Taylor v. Culliver*, No. 4:09-CV-00251-KOB-TMP, 2012 WL 4479151, at *22–23 (N.D. Ala. Sept. 26, 2012), *aff'd* 638 F. App'x 809 (11th Cir. 2015) (holding that the *Ake* claim was not federal in nature); *St. Claire v. Florida*, No. 2:19-CV-720-JES-MRM, 2022 WL 1912579, at *5 (M.D. Fla. June 3, 2022) (holding the same and noting the petitioner's failure to cite any authority extending *Ake* to a cellphone expert).

Under AEDPA, if no Supreme Court holding directly addresses the issue, a state court's decision cannot be contrary to or an unreasonable application of clearly established federal law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006). Because there is no clearly established federal law requiring the provision of a non-

10

psychiatric expert, the Alabama state court's denial of Cox's request was governed by state law and committed to the trial court's discretion. As in *Gary*, Cox's claim does "not present a federal constitutional question." 558 F.3d at 1254.

## D. Alternative Merits Analysis

Though this court finds that Cox's *Ake* claim falls short of presenting a cognizable federal question, even if it did, Cox's claim would still fail.

The ACCA correctly acknowledged *Ake* as the governing legal rule and adjudicated Cox's claim on the merits. Consequently, the "contrary to" clause of § 2254(d)(1) is not implicated, and this court's review is limited to whether the state court's decision involved an "unreasonable application" of clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362, 405–11 (2000). Under this clause, a federal court may not grant relief simply because it concludes in its independent judgment that the state court applied law incorrectly; the application must be "objectively unreasonable." *Id.* at 411.

In assessing the reasonableness of a state court's *Ake* adjudication, the Eleventh Circuit employs a three-part framework:

> Assuming, *arguendo*, that *Ake* extends to non-psychiatric experts, then we must determine (1) whether [the petitioner] made a timely request to the trial court for the provision of expert assistance; (2) whether it was "reasonable" for the trial court to deny [the] request; and (3) whether the denial rendered [the] trial fundamentally unfair. *See Moore*, 809 F.2d at 710 (noting that the Supreme Court in *Ake* followed this three-part analytical approach). With respect to the third *Moore* requirement, we ask whether the *Ake* error "had substantial and injurious effect or influence in determining the jury's verdict." *Hicks v. Head*, 333 F.3d 1280, 1286 (11th Cir. 2003).

*Conklin*, 366 F.3d at 1206.

Cox satisfies the first *Moore* requirement. He filed multiple pretrial motions seeking funds for an independent computer-forensic expert in advance of trial. *See*

11

*Conklin*, 366 F.3d at 1207 (holding that the request for expert assistance made before trial satisfied the timeliness requirement).

The second *Moore* requirement asks whether it was reasonable for the trial court to deny Cox's request for expert assistance. *See Moore*, 809 F.2d at 710 (11th Cir. 1987). That inquiry turns on whether, given the showing made at the time of the request, the denial likely deprived the defendant of an adequate opportunity to confront the State's case and present his defense. *Id.* at 711. On habeas review, the question is not whether the denial was correct, but whether the state court's resolution was objectively unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 101–03 (2011).

Applying this standard, the court considers whether the explanation offered in support of Cox's request satisfied *Moore's* second requirement.

### 1. The Prosecutor Presence Argument

Cox first contends that the denial of expert funds was unreasonable because the alternative access provided by the trial court was constitutionally deficient. Specifically, Cox argues that defense counsel "did not meet with the State's expert witness until after his very first motion seeking funds," and that this meeting "took place in the presence of the lead investigator and prosecutor who would immediately begin to pick apart the defense counsel's strategy through the questions asked to the State's expert witness." (Doc. 10 at 15.) Cox asserts that this arrangement "forced the defense to rely on help from the very ones that would prosecute the defendant at trial." (*Id.* at 16.)

The importance of procedural privacy in preparing a defense is firmly embedded in federal criminal practice. Federal law, for instance, permits indigent defendants to apply ex parte for expert assistance. *See* 18 U.S.C. § 3006A(e). The Eleventh Circuit has likewise acknowledged the strategic sensitivity of expert requests, observing in *Conklin* that "without the assurance of mandatory ex parte

proceedings as provided by *Ake*," defense counsel might be "justified in omitting from his motions detailed and precise information as to how the requested assistance would be used." 366 F.3d at 1209 n.15.

The constitutional right recognized in *Ake* requires the State to provide an indigent defendant with "access to a [competent expert] who will . . . assist in evaluation, preparation, and presentation of the defense." 470 U.S. at 83; *see also McWilliams v. Dunn*, 582 U.S. 183, 186 (2017) ("McWilliams"). Building on this principle, a natural corollary follows: if a defendant is entitled to request an expert ex parte, it follows that consultation with that expert should also be private. Without such confidentiality, defense counsel is inherently constrained in exploring technical theories and weaknesses in the State's case—constraints that are deliberately alleviated by the ability to request the expert ex parte in the first place.

To be sure, one could attempt to distinguish between a right to submit an ex parte application for expert assistance and a right to private consultation with the expert once assistance is granted; however, in so far as *Ake* had clearly established the former as a constitutional requirement, that distinction would arguably elevate form over substance. "General legal principles [may] constitute clearly established law under AEDPA so long as they are holdings of [the Supreme Court]." *Andrew v. White*, 604 U.S. 86, 94 (2025) (vacating the Tenth Circuit for failing to recognize a relevant legal rule as clearly established under AEDPA). Where a constitutional rule is clearly established, its functional integrity cannot be subverted through formalistic compartmentalization; the mere logical possibility of a distinction does not render such a distinction reasonable. *Cf.* David Hume, *An Enquiry Concerning Human Understanding* § 10, pt. 1 (1748) ("A wise man . . . proportions his belief to the evidence."). Thus, if *Ake* had clearly established a constitutional right to ex parte expert applications, it would follow with considerable force that the right necessarily

13

encompassed confidential consultation sufficient to permit genuine defense preparation.

The difficulty for Cox, however, is that *Ake* did not clearly establish such an ex parte right. Under AEDPA, "clearly established [f]ederal law" refers only to the holdings of the Supreme Court, not to dicta. *Williams*, 529 U.S. at 412 (2000). A statement is dicta if it was not "necessary to [the] disposition of [the] case." *Tyler v. Cain*, 533 U.S. 656, 663 n.4 (2001) (citation omitted).

The only mention of an ex parte mechanism in *Ake* occurs in the following sentence: "When the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent." 470 U.S. at 82–83. This language is conditional and illustrative; it announces no entitlement and mandates no specific procedure. It merely observes that, if such a showing is made, the relevance of psychiatric assistance will be evident; the sentence neither defines the constitutional right nor was it necessary to *Ake's* holding. To the contrary, the Supreme Court expressly declined to prescribe specific procedures, stating that "we leave to the States the decision on how to implement this right." *Id.* at 83. *See generally, e.g.*, *Granviel v. Lynaugh*, 881 F.2d 185, 191–92 (5th Cir. 1989) (holding that Texas satisfied *Ake* by providing access to a neutral, court-appointed psychiatrist, notwithstanding the defendant's request for a confidential expert).

Because *Ake* does not clearly establish a right to ex parte proceedings, the state court's denial of Cox's motion for expert assistance, which effectively precluded a private expert consultation, was objectively reasonable. While Cox may find support in the suggestive dicta of *Ake* or the circuit-level reasoning of *Conklin*, "Circuit precedent does not constitute 'clearly established [f]ederal law' for purposes of § 2254(d)(1)." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (citation omitted).

14

Consequently, Cox has failed to show that the state court's adjudication of this specific argument was an unreasonable application of clearly established federal law.

## 2. Testimony on Intent Argument

Cox next argues that the denial of funds was unreasonable because Agent Evans was not an "unbiased fact finder," but rather was an adversary that failed to provide neutral assistance. (Doc. 10 at 16.) Specifically, Cox contends that Agent Evans testified beyond mere forensic reporting, instead offering an opinion on the ultimate issue in the case by asserting that he intentionally downloaded the illicit files. (*Id.*) Thus, in Cox's view, because Agent Evans functioned as a partisan for the prosecution, access to her did not satisfy the constitutional floor established in *Ake*.

The Supreme Court's decision in *McWilliams* is the clearly established benchmark for this claim. In that decision, the Court held that *Ake* "clearly established that a defendant must receive the assistance of a [competent expert] who is sufficiently available to the defense and *independent from the prosecution* to effectively 'assist in evaluation, preparation, and presentation of the defense.'" *Id.* at 198 (quoting *Ake*, 470 U.S. at 83) (emphasis added). While the *McWilliams* Court declined to decide whether *Ake* requires a "partisan" expert specifically for the defense, it reaffirmed that the expert must, at a minimum, be independent from the prosecution. *See, e.g., id.* at 208 (Alito, J., dissenting) (quoting Paul C. Giannelli, *Ake v. Oklahoma: The Right to Expert Assistance in a Post-Daubert, Post-DNA World*, 89 Cornell L. Rev. 1305, 1399 (2004)) ("It is uncertain from *Ake* whether the appointment of a neutral expert (who reports to the court) is sufficient or whether a 'partisan' defense expert is required.").

Applying this standard, and again assuming that *Ake* extends beyond the context of psychiatric experts, the state court's determination that Agent Evans satisfied Cox's *Ake* right was an objectively unreasonable application of clearly

established federal law. Agent Evans was an investigator for the prosecution; she was not appointed by the court as a neutral expert "independent from the prosecution." *McWilliams*, 582 U.S. at 186.

This lack of independence was particularly manifest when Agent Evans testified to her belief that Cox intentionally downloaded the files in question, the central, disputed issue of the case. The Eleventh Circuit's reasoning in *Conklin* provides the necessary framework for understanding why this lack of independence constitutes a constitutional failure. Relying on the former Fifth Circuit's holding in *Barnard v. Henderson*, the *Conklin* court observed that "fundamental fairness is violated when a criminal defendant . . . is denied the opportunity to have an expert of his choosing . . . examine a piece of critical evidence whose nature is subject to varying expert opinion." *Barnard*, 514 F.2d 744, 746 (5th Cir. 1975) (reversing a habeas denial and holding that the defendant should have been granted an independent ballistics expert of his choosing).

Digital forensic intent is no less subject to varying expert opinion than the ballistics evidence in *Barnard*. While the presence of a file on a storage device is a static fact, the technical mechanism of acquisition is a matter of reconstructive inference. In the modern digital landscape, the appearance of an illicit file can result from a manual user save or from automated background processes such as malware scripts, server-side pop-under triggers, or automated browser caching; the subsequent transfer to a thumb drive may be automated by malware designed to spread to removable media, folder synchronization scripts, or bulk blind transfers. If a ballistics identification based on a partially destroyed slug (as in *Barnard*) is subject to varying opinion, then the inferential leap from a forensic hit in a system directory to a manual, intentional act is likewise a matter of technical debate. As the *Barnard* court noted, "the only means by which the defendant can defend against expert testimony by the State [on such an issue] is to offer expert testimony of his

16

own." *Id.* (quoting *State v. Barnard*, 287 So. 2d 770, 778 (La. 1973) (Barham, J., dissenting)).

By providing only an expert drawn from the prosecution team and who presented the prosecution's theory of intent, the state court failed to provide Cox with an expert who could "effectively 'assist in evaluation, preparation, and presentation of the defense.'" *McWilliams*, 582 U.S. at 186 (citation omitted). This was not a case where a neutral, court-appointed expert reached a conclusion unfavorable to the defendant—a risk the *McWilliams* dissenters noted a defendant must "live with." *Id.* at 204 (Alito, J., dissenting). Rather, it was a case where the State offered its own investigator as the assistant. Because no fair-minded jurist could conclude that a prosecution agent testifying to the defendant's guilt satisfies the *Ake* standard for independent assistance, as clarified by *McWilliams*, the state court's decision was objectively unreasonable. *See Harrington*, 562 U.S. at 103.

### 3. The Search for Exculpatory Evidence

Cox further contends that the state court's denial was unreasonable because an independent expert was required to search the devices for exculpatory evidence that Agent Evans allegedly ignored. (Doc. 10 at 16.)

This argument is logically distinct from the independence claim addressed in the previous section. The court's finding as to Cox's second argument concerned a lack of structural independence, a failure that can be identified ex ante based on Agent Evans' status as a state investigator. By providing the defense with an expert who was an agent of the prosecution and who had already reached adversarial conclusions, the State provided access that was procedurally incapable of providing the "independent assistance" mandated by *McWilliams* and *Ake*.

In contrast, Cox's third contention alleges a substantive bias, or what may be described as impermissible ex post partisan distortion. Cox essentially argues that Agent Evans, having been tasked by the State with the examination, intentionally

17

ignored or suppressed exculpatory facts to favor the prosecution. This is a claim of active forensic corruption.

Cox's argument fails here because he fails to point to any support that a claim of substantive bias was present. While this court finds Agent Evans non-independent for the purposes of Cox's second argument, the court does not presume that a qualified forensic expert committed malpractice or acted with ex post malice. In the absence of a showing to the contrary, a trial court is entitled to a "presumption of regularity" regarding the technical protocols and professional conduct of state forensic examiners. *Parke v. Raley*, 506 U.S. 20, 29–30 (1992). Cox does not attack Agent Evans' credentials or challenge her forensic methodology; nor does he provide a specific description of what exculpatory data was missed or why Agent Evans' protocols were inadequate to uncover it. *See Moore*, 809 F.2d at 712 (requiring a defendant seeking expert assistance to offer a specific explanation of the expert's necessity and relevance).[5] On this showing, the state court's denial was not unreasonable.

### 4. Technical Education and the Mechanism of Intent

Finally, Cox contends that the state court's denial was unreasonable because an independent expert was required to educate the jury on the technical mechanism of accidental downloads. (Doc. 10 at 15.) Cox argues that although Agent Evans conceded on cross-examination that accidental mass-downloads were possible, the jury lacked the technical framework to understand how such an event could occur without human intervention. (*Id.*)

---

[5] Cox alleges that Agent Evans testified she did not "examine the devices for any exculpatory evidence." (Doc. 10 at 16.) However, Cox does not point to any part of the trial transcript supporting this assertion. As the Seventh Circuit has observed, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The court will not scour the record to substantiate an unsupported factual claim. Without a citation to the transcript, the court cannot conclude that the trial court was placed on notice of any such testimony by Agent Evans.

This argument implicates one recognized function of expert assistance: explaining not merely that an outcome is possible, but the causal mechanism by which it could arise. *See* Fed. R. Evid. 702(a); *cf. Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (holding that "[a] court may conclude that there is simply too great an analytical gap between the data and the expert opinion proffered."). As Francis Bacon restated the classical principle, "Vere scire, esse per causas scire," meaning that to know something truly is to know it by its causes. *Novum Organum* bk. I, aph. II (1620). Without an expert to explain the forensic causes, such as how malware can trigger background scripts or modify keystrokes to automate searches, a jury lacks the intellectual framework to move a theory from a mere logical possibility to a plausible probability.

However, the court's review is constrained by the deferential standard of § 2254(d). While a specialized educator might have been optimal, the "basic tools of adequate defense" include the right to confront and cross-examine the State's expert. *See Ake,* 470 U.S. 68, 77 (1985) (quoting *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)); *see also* 5 Wigmore, Evidence § 1367, at 29 (3d ed. 1940) (characterizing cross-examination as the "greatest legal engine ever invented for the discovery of truth."). Because Cox fails to show that Agent Evans was substantively biased or non-compliant in her forensic conduct (as discussed in Cox's third argument), defense counsel was presumably not precluded from using her as a resource.

Counsel had the opportunity to meet with Agent Evans, learn the technical details of the software protocols, and then elicit those specific mechanisms through cross-examination. Given that Agent Evans was a competent expert who conceded the defense's premise, a fair-minded jurist could reasonably conclude that the trial court provided Cox with the necessary tools to prepare and present this technical theory. *See Harrington*, 562 U.S. at 103.

Furthermore, Cox's reliance on cases such as *United States v. Lee*, 64 M.J. 213 (C.A.A.F. 2006), and *Lowe v. Mississippi*, 127 So. 3d 178 (Miss. 2013), is misplaced. In those cases, the defendants disputed the nature of the evidence itself; specifically, whether the images discovered were actually child pornography or were computer-generated. *See Lowe*, 127 So. 3d at 183; *Lee*, 64 M.J. at 217. In such instances, an expert is required for an essential predicate finding as to the character of the images themselves. Here, Cox did not dispute that the images discovered depicted child pornography; he claimed only that they were downloaded accidentally. As the ACCA correctly noted, this factual distinction renders *Lee* and *Lowe* "distinguishable and unpersuasive" in the context of Cox's trial. (Doc. 7-9 at 11–12.)

Consequently, the state court's failure to provide a separate, independent expert for the purpose of technical education was not an objectively unreasonable application of *Ake*.

\*    \*    \*

Having determined that the state court unreasonably applied *Ake* only insofar as it held that access to a prosecution agent satisfied Cox's right to independent assistance, the court must now address the third *Moore* requirement: whether this denial rendered the trial fundamentally unfair.

As a threshold matter, the court must determine whether the *Ake* error here is a "trial error" subject to harmless-error review or a "structural error" requiring a presumption of prejudice. *McWilliams v. Comm'r, Ala. Dep't of Corr.*, 940 F.3d 1218, 1223 (11th Cir. 2019) ("McWilliams II"); *see also Brecht*, 507 U.S. at 629–30. In *McWilliams II*, the Eleventh Circuit held on remand that when an *Ake* claim is litigated on direct appeal and results in a record that defies analysis—because it is

20

impossible to know how an independent expert would have assisted the defense—prejudice must be presumed. 940 F.3d at 1224.

However, the Eleventh Circuit has since clarified that *McWilliams II* does not mandate a presumption of prejudice in every denial-of-expert case litigated on direct appeal. Rather, the court "presume[s] prejudice only when there is no subsequent record to look to." *Sears v. Warden*, 73 F.4th 1269, 1295 (11th Cir. 2023). Where the record contains sufficient evidence to "quantitatively assess" the impact of the error, the *Brecht* standard applies. *Brecht*, 507 U.S. at 629; *see also Sears*, 73 F.4th at 1295–96.

The record in this case is not the evidentiary vacuum that triggered a presumption of prejudice in *McWilliams II*. *See* 940 F.3d at 1226. Unlike the sentencing error in that case, where the defense was left entirely without independent guidance to interpret complex data, the trial record here includes the full testimony of Agent Evans. Because her concession on cross-examination provides a quantifiable basis to assess exactly what technical information reached the jury, the impact of the error does not defy analysis. *Id.* at 1224. The court is not forced to speculate as to the impact of the defense's theory; the theory was presented, and the jury rejected it. Consequently, the *Ake* violation here constitutes a trial error amenable to harmless-error review.

The ACCA concluded that the lack of an independent expert did not have a substantial and injurious effect on the verdict. (Doc. 7-9 at 11.) The court reasoned:

> [D]efense counsel was able to consult with the State's expert prior to trial and was able, through his cross examination of Agent Evans, to put forth Cox's theory that the child pornography could have been downloaded without his knowledge. Cox has not indicated that his own expert would have provided different information to the jury nor has he asserted that Agent Evans was uncooperative in any way. Accordingly, this Court cannot say that Cox's trial was rendered unfair by the trial court's refusal to authorize funds for an independent expert.

21

(*Id.*) Because the ACCA applied the correct harmless-error framework, this court must defer to its conclusion unless that conclusion was "objectively unreasonable." *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (citations omitted).

The ACCA's conclusion was reasonable. As the Eleventh Circuit observed in *Conklin*, an *Ake* error is harmless where the missing expert testimony would have "simply reiterated" concessions already made on cross-examination. 366 F.3d at 1210. Here, Cox has not shown that an independent expert would have provided technical information beyond what Agent Evans already admitted was possible; thus, it is reasonable to assume that the jury's decision to convict was likely driven by the volume of illicit files and an adverse credibility determination regarding Cox's claim of an accident, rather than a lack of technical literacy.

Importantly, the court notes that the quantifiable nature of this record is a direct result of the specific *Ake* theory Cox successfully advanced. If Cox had established a violation based on a lack of privacy (Cox's first argument) or forensic malpractice (Cox's third argument), the record would likely be silent as to prejudice. In those scenarios, the court could only guess at what a private consultation or a competent search would have yielded. Under *McWilliams II* and *Sears*, such errors would likely defy analysis and require a presumption of prejudice. However, because the violation here is limited to the independence of the expert (Cox's second argument), and because defense counsel was not precluded from learning and presenting the relevant technical mechanisms through the State's expert (Cox's fourth argument), the error is quantifiable and, under *Brecht*, harmless.

In sum, even assuming that *Ake* extends to the context of computer forensics, Cox is not entitled to relief. The state court's denial of the request for expert funds was an unreasonable application of *Ake* regarding the requirement for independent assistance, but this error did not render the trial fundamentally unfair. Accordingly, Cox's *Ake* claim fails on the merits.

22

## IV.   CERTIFICATE OF APPEALABILITY

For a petitioner to obtain a certificate of appealability, he must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing requires that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Where a petition is denied on procedural grounds, he must show both that the claim presents a substantial constitutional issue and that the correctness of the procedural ruling is "debatable among jurists of reason." *Gordon v. Sec'y, Dep't of Corrs.*, 479 F.3d 1299, 1300 (11th Cir. 2007) (citations omitted).

The court finds that reasonable jurists could debate whether the state court's failure to provide a confidential or ex parte expert consultation—which this court found was not "clearly established" by the Supreme Court—nevertheless constituted an unreasonable application of *Ake* in light of existing Circuit interpretations. *See Conklin*, 366 F.3d at 1209 n.15.

Further, jurists could debate whether the *Ake* violation found by this court constitutes structural error rendering prejudice presumed, or trial error subject to harmless-error review. *Compare McWilliams II*, 940 F.3d at 1224, *with Sears*, 73 F.4th at 1295–96. Accordingly, a limited certificate of appealability shall issue.

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion and Order, it is **ORDERED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (doc. 10) is **DENIED** without an evidentiary hearing;

2. This case is **DISMISSED**;

3. A Certificate of Appealability is **GRANTED** as to the following limited issues:

- Whether *Ake v. Oklahoma* clearly establishes a right to a confidential or ex parte expert consultation for the purpose of defense preparation;

- Whether the denial of independent expert assistance in this case constitutes structural error or, alternatively, trial error subject to harmless-error review; and

- Whether any constitutional error in the denial of independent expert assistance had a substantial and injurious effect on the jury's verdict, so as to render Petitioner's trial fundamentally unfair?

4. A Certificate of Appealability is **DENIED** as to all other issues; and,

5. The Clerk of Court is **DIRECTED** to close this case.

**DONE** on this the 11th day of March 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE