IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRANDON D. COX,<br>AIS# 308472,<br><br>    Petitioner,<br><br>    v.<br><br>PATRICE RICHIE JONES, *et al.*,<br><br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)   CASE NO. 2:23-cv-226-RAH-JTA<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Before the Court is Petitioner Brandon D. Cox's *Motion to Alter or Amend Judgment Pursuant to Rule 59(e)* of the Federal Rules of Civil Procedure. (*See* doc. 21.) Cox seeks relief from this Court's *Memorandum Opinion and Order* entered on March 11, 2026, which denied his Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (*See* doc. 14.) Cox contends that the judgment contained a manifest error of fact regarding the testimony of a State's forensic expert, which he argues resulted in a manifest injustice. Having considered the motion and the underlying record, the Court finds that the motion is due to be denied.

### II.   BACKGROUND

Cox was indicted on seven counts of possession of obscene matter (as well as two counts of intent to distribute that were later dismissed) in the Circuit Court of Elmore County, Alabama, on April 17, 2015. (Doc. 7-1 at 2, 9–12.) On August 10, 2015, Cox filed a motion to suppress evidence, which the trial court denied following an evidentiary hearing on June 10, 2016. (Doc. 7-1 at 2–4, 37–38, 66.) Subsequently, Cox made three distinct requests for independent expert funding: a first motion on

September 9, 2016 (doc. 7-1 at 68); a second on December 15, 2016 (doc. 7-1 at 72–74); and a third, amended request on January 12, 2017 (doc. 79–80). The trial court denied each request, with the final denial issued orally on January 24, 2017. (Doc. 7-1 at 70, 75; doc. 7-3 at 93.) Thereafter a jury trial was held, and Cox was found guilty of all 7 counts on January 26, 2017. (Doc. 7-1 at 95–98.)

After exhausting his state court remedies, Cox timely filed the instant § 2254 petition. On March 11, 2026, this Court entered a *Memorandum Opinion and Order* (doc. 14) denying the petition without an evidentiary hearing. Twenty-eight days later, on April 8, 2026, Cox filed the pending *Motion to Alter or Amend Judgment.* (Doc. 21.)

### III.   STANDARD OF REVIEW

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a party may file a motion to alter or amend a judgment "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The decision to grant or deny a Rule 59(e) motion is "committed to the sound discretion of the district judge." *Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000) (citation omitted). A motion to reconsider is an extreme measure that should be used in order to prevent "manifest injustice." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 945 (11th Cir. 2022). Thus, a successful Rule 59(e) motion ordinarily requires a showing "of clear and obvious error [where] the interests of justice demand . . . correcti[on]." *Am. Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)).

"The only grounds for granting a motion to alter or amend a judgment are newly discovered evidence or manifest errors of law or fact." *King v. King*, 69 F.4th 738, 741 n.2 (11th Cir. 2023) (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)); *see also PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021).  A manifest error is an error "that is plain and indisputable, and that amounts to a complete disregard of the controlling law" or the credible evidence in

the record. *Shuler v. Garrison*, 718 F. App'x 825, 828 (11th Cir. 2017) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)).

Courts also recognize that an intervening change in controlling law is a ground for reconsideration. *See Banister v. Davis*, 590 U.S. 504, 508 n.2 (2020); *see also Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023) (discussing the potential for an intervening change in the law as the basis for altering a judgment); *Beepot v. JP Morgan Chase Nat. Corporate Services, Inc.*, 628 F. App'x 1008, 1009–10 (11th Cir. 2015) (concluding that the district court did not err by denying plaintiff's motion to amend or alter judgment under Rule 59(e) after finding no intervening change in controlling law); *Summit Med. Ctr. of Ala., Inc. v. Riley,* 284 F. Supp. 2d 1350, 1353 (M.D. Ala. 2003). However, a Rule 59(e) motion cannot be used to "relitigate old matters, raise argument[s,] or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) (citations omitted).

## IV.   DISCUSSION

### A. Timeliness

Cox filed his motion on the twenty-eighth (28th) day after the filing of the *Memorandum Opinion and Order* (doc. 14) denying the habeas petition. Accordingly, the motion is timely. *See* Fed. R. Civ. P. 59(e).

### B. Alleged Manifest Error of Fact

Cox contends that the Court committed a manifest error by overlooking a citation to the record that allegedly supports his contention that Agent Evans testified she did not "examine the devices for any exculpatory evidence." (Doc. 21 at 1–3 (citing doc. 14 at 18 n.5).) Cox argues that had the Court considered this citation, it would have found that he satisfied the second prong of the test set forth in *Moore v. Kemp*, 809 F.2d 702 (11th Cir. 1987) (en banc). (Doc. 21 at 3.) From there, he asks the Court to revisit its position regarding the presumption of prejudice under

3

*McWilliams v. Comm'r, Ala. Dep't of Corr.*, 940 F.3d 1218 (11th Cir. 2019) (McWilliams II), and *Sears v. Warden*, 73 F.4th 1269 (11th Cir. 2023). (Doc. 21 at 3.)

## 1. No Manifest Injustice

In the instant motion, Cox does not challenge the Court's primary holding that he failed to raise a federally cognizable claim; instead, his contention concerns only the Court's alternative merits analysis. Because Cox leaves the dispositive basis for the Court's judgment untouched, his motion does not identify any error that would warrant correction in the interests of justice or otherwise give rise to manifest injustice. *See White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982) (citation omitted) ("the federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits"); *see also Bannister*, 590 U.S. at 508; *Lucas v. Fla. Power & Light Co.*, 729 F.2d 1300, 1301 (11th Cir. 1984) ("Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of the dispute, and not matters collateral to the merits."); *Finch v. City of Vernon*, 845 F.2d 256, 258–59 (11th Cir. 1988); *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citation omitted) (a motion to reconsider "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."). Because Cox's proposed error is directed only to this Court's alternative merits section—an analysis distinct from the Court's basis for denying Cox's petition—Rule 59(e) relief is not appropriate here.

## 2. No Manifest Error of Law or Fact

Even if Cox's arguments were directed at the portion of this Court's opinion that disposed of his § 2254 petition, the motion is still due to fail given that it neglects to establish any actual error of law or fact, let alone one that is plain, indisputable, and amounts to a complete disregard of controlling law or evidence.

4

The second prong of the *Moore* test asks "whether it was 'reasonable' for the trial court to deny [the funds for expert witness] request." *Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004). The court further explained:

> In determining the reasonableness of the trial court's refusal to provide independent expert assistance, we consider only the facts available to the trial judge when he made a ruling on the particular motion. *Moore*, 809 F.2d at 710–13. The reasonableness of a judge's denial "necessarily turns on the sufficiency of the petitioner's explanation as to why he needed an expert." *Id*. at 710. Thus, we ask whether the trial judge should "have concluded that unless he granted his request petitioner would likely be denied an adequate opportunity fairly to confront the State's case and to present his defense." *Id*.

*Conklin*, 366 F.3d at 1208.

In his habeas petition, Cox argued that the state court's denials of his three motions for an independent expert were unreasonable, in relevant part, because a competent expert was required to search the devices for exculpatory evidence that Agent Evans allegedly ignored. (Doc. 10 at 16.) On page three of the Amended Petition, Cox states: ". . . the State's forensic examiner testified that she did not examine the Devices for any exculpatory evidence (e.g., viruses or other files not containing child pornography that would negate Mr. Cox's intent). (R. 70)." (Doc. 10 at 3.)[1] Page seventy (70) of the reporter's transcript, as well as the context provided by pages sixty-nine (69) and seventy-one (71), reflect the following testimony during the direct examination of Agent Evans by Cox's trial counsel during the suppression hearing:

> Q. To your knowledge then nobody has no human being has taken the videos or pictures you sent and the videos or pictures in the National Data Base and sat down with them and looked at them side to side to make sure these are the same people; is that right?

---

[1] The Court understands "R. 70" to refer to page seventy (70) of the trial Court Reporter's Transcript of Proceedings. (*See, e.g.*, doc. 6 at 2 n.1.)

5

A. That's correct. Like I said, their policy is they review -- they take a handful out and review them to make sure they do match up, to make sure that their software they are using still runs correctly.

Q. I just want to make sure I'm clear. Are you saying they did a picture to picture, side by side comparison on some of them?

A. Yes.

Q. Do you know which ones of those they did?

A. No.

Q. Some of them was a picture to picture review and some of them was this hash value or digital whatever; is that right?

A. Correct.

Q. Do you know who that person is that looked at them side by side?
A. It may just give me an ID number. No, it does not have their information on here.

Q. Let me ask you this. Did you actually confirm that with somebody at the data base or that is just your understanding of their protocol?

A. That was my understanding of their protocol, but that was when I started in 2007. It probably has changed by now. I have not got an update to that.
    [Defense Counsel]: One second, Judge.

Q. As to the thumb drive, can you -- would you have information that would tell us when the last time it was accessed?

A. Not the thumb drive itself. I didn't save that kind of information. I only saved what was in my search warrant to save. That would be the child pornography images -- well, what I marked as possible child pornography. I can look at those and tell you when the last access date was.

(Doc. 7-2 at 179–181.)

Contrary to Cox's characterization, this testimony does not reflect a statement by the forensic examiner that she "did not examine the devices for any exculpatory evidence." Rather, the testimony describes the technical protocols for hash value comparisons and the scope of the data preserved pursuant to a search warrant.

Moreover, Cox's subsequent motions for expert assistance failed to offer a "specific explanation of the expert's necessity." *Moore*, 809 F.2d at 712. Most notably, Cox neglected to reference Agent Evans' testimony in any of his three motions seeking expert assistance. Further, as this Court previously observed, in his motion for expert funds, "Cox does not attack Agent Evans' credentials or challenge her forensic methodology; nor does he provide a specific description of what exculpatory data was missed or why Agent Evans' protocols were inadequate to uncover it." (Doc. 14 at 18.) Nothing in the testimony at R. 70 alters this conclusion or suggests he was being denied an "adequate opportunity fairly to confront the State's case." *Moore*, 809 F.2d at 710.

### 3. The Record Does Not Support Cox's Claim

Additionally, out of an abundance of caution, the Court scoured the record for additional testimony—prior to the trial judge's decision to deny Cox expert funds—that could potentially support Cox's argument.[2] At R. 73, Agent Evans testified on cross examination by the State's attorney as follows:

---

[2] The Court emphasizes the temporal distinction between the inquiries required by the second and third prongs of *Moore*. The second prong—reasonableness—is a snapshot inquiry focused exclusively on the facts available to the trial judge at the time of the ruling. *See Moore*, 809 F.2d at 710–13. Conversely, the third prong—fundamental fairness—requires a review of the entire trial record to determine if the denial of expert assistance had a "substantial and injurious effect" on the verdict. *Hicks v. Head*, 333 F.3d 1280, 1286 (11th Cir. 2003). Under either inquiry, the testimony in the record fails to bridge the gap between Cox's speculative assertions and the specific showing *Moore* requires.

7

Q. Did you all -- your forensic evaluation or examination, did you only limit it to the child pornography images and videos because that's all the search warrant allowed?

A. Yes.

Q. Would lists of music files and all that other stuff be outside the scope of the search warrant?

A. Yes.

(Doc. 7-2 at 183.)

This testimony represents the only evidence in the record predating the trial court's rulings on the motions for expert assistance that could even arguably be construed as suggesting that Agent Evans limited her forensic analysis. That said, the testimony above is hardly representative of Cox's contention that Agent Evans intentionally chose not to look for exculpatory evidence. To the contrary, this testimony confirms only that Agent Evans's forensic examination was circumscribed by the legal boundaries of the search warrant. Cox's attempt to equate the examiner's adherence to those boundaries with a failure to uncover exculpatory evidence is a logical non sequitur; the ex post argument—that the examiner's failure to search for viruses or other files that would negate Cox's intent constitutes forensic malpractice—is exactly the kind of "undeveloped assertion[]" that the Eleventh Circuit has held insufficient to satisfy *Moore*. 809 F.2d at 712 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 323–24 n.1 (1985)).

Ultimately, Cox's due process claim—that he was denied expert assistance under *Ake v. Oklahoma*—fails at several levels insofar as it is premised on alleged deficiencies in forensic expertise. 470 U.S. 68 (1985). First, the claim fails because it is not based on clearly established federal law that *Ake* extends beyond psychiatric assistance. *Gary v. Hall*, 558 F.3d 1229, 1254 (11th Cir. 2009). Second, even

8

assuming *Ake* extends beyond psychiatric experts, the record does not establish that it was unreasonable for the state court to deny Cox's request for such assistance. *See Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004). And even if *Ake* clearly established a right to the type of expert assistance Cox seeks here, the record does not show that he was denied the "meaningful expert assistance" contemplated by *Ake*—specifically with respect to Cox's third argument concerning the competency of Agent Evans as an expert. *See McWilliams v. Dunn*, 582 U.S. at 193–198; (*see also* doc. 14 at 17–18).

## V.  CONCLUSION

Rule 59(e) is an extraordinary remedy to be employed sparingly. Cox has failed to identify any manifest error that would alter the outcome of this Court's prior *Memorandum Opinion and Order* (doc. 14). Accordingly, and for good cause, Cox's *Motion to Alter or Amend Judgment* (doc. 21) is **DENIED**.

**DONE** and **ORDERED** on this the 24th day of April 2026.

_____

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE

9